Case: 1:23-mj-168
Assigned To: Magistrate Judge Zia M. Faruqui
Assign. Date: 7/14/2023
Description: Complaint with Arrest Warrant

## STATEMENT OF FACTS

I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"). I have been assigned to the Joint Terrorism Task Force since August 2018. In my duties as a TFO, I have conducted criminal investigations related to national security investigations related to counterterrorism. My training and experience have involved, among other things, interviewing witnesses and confidential human sources, executing court-authorized search warrants, conducting surveillance, and analyzing documentary and physical evidence. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice

President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

**FACTS SPECIFIC TO DEFENDANT TYLER BRADLEY DYKES**

Following the riot at the United States Capitol and the unlawful breach of the Capitol Building, law enforcement officers and others reviewed the significant amount of photographic and video imagery in order to identify individuals who violated the law on January 6, 2021. Various photographic and video evidence, some of which are shown below, a white male, with an athletic build, approximately 20 to 30 years old, with short brown hair. In the photos and videos from January 6, the individual was wearing blue jeans, black sneakers with a distinctive vertical line on the soles, a gray puffer jacket, a gray, textured gaitor, and a tan Adidas baseball hat with black stripe running through the adjustable band.

The individual described above was given the hashtag name of "#graygoose" as is shown in the below photograph:



In December 2021, the FBI received information from an anonymous tipster that an individual by the name of TYLER BRADLEY DYKES had entered the U.S. Capitol on January 6, 2021 and assaulted law enforcement officers. The tipster wrote as follows:

The suspect is Tyler Dykes. Lives in Bluffton, SC. I [was with Dykes] and we started talking about the January 6th attack. We had differing opinions about it but was respectful. He then told me about how he went into the capital with a mask on with the other rioters and started beating up police officers. He states he was still in

the military at the time. He said he has video evidence of him being there but he did not show me since we were in a public setting. He was there for 'fun' and wanting to make a statement. He was there with other group of people but would not state who. I believe he was telling the truth about it and I believe he needs to be investigated.

The tipster also provided a cell phone number for the individual, with the last four digits of 3467.

Based on this information, I initiated a full investigation of this individual. Among other things, this included comparing the information provided by the tipster with publicly available information, such as driver's license information, and determining whether the telephone phone number provided pinged within the geofence from January 6, 2021, which it did. According to records obtained through a subpoena served on VERIZON, the cell phone number with the last four digits of 3467 was associated with a family plan for the DYKES family.

As the investigation was on-going, in September 2022, the FBI received information from a confidential human source who provided photographic and video of evidence of a subject who the CHS confirmed to be DYKES based on open-source evidence. The photo and video evidence found showed DYKES participating in unlawful activity at the United States Capitol Building on January 6, 2021 in Washington, D.C. The information provided included certain images that identified unique facial features of the subject, such as his unique eyebrows:



Based on the above-described investigative steps, the open-source information received from the CHS, and my own personal knowledge, I was able to confirm that the individual described by the tipster as TYLER BRADLEY DYKES and featured in the photos and video footage from January 6, was, in fact, DYKES. My personal knowledge stems from the fact that I met and personally interviewed DYKES in or around January 2019 regarding his potential ties to domestic extremist groups.[1]

---

[1] Not only was DYKES indicted and pleaded guilty for his illegal involvement in the "Unite the Right" rally in Charlottesville, Virgina, but publicly available information also indicates he may

Open-source information from January 6, 2021 further revealed that DYKES marched from the Stop the Steal Rally towards the United States Capitol with two other individuals, Person 1 and Person 2 identified below.





---

still have ties to extremist groups such as the "Southern Sons Active Club." *See, e.g.,* https://atlantaantifa.org/2023/04/19/inside-southern-sons-active-club-part-ii/#DykesBadStPatricks.

DYKES can be seen nearing Capitol Grounds with a cell phone in his hand:



DYKES is then seen in open-source video evidence moving and tearing down barriers with other rioters as they approached restricted grounds:





Eventually, DYKES joined the mob as it attacked and eventually overwhelmed a line of law enforcement officers attempting to protect the Capitol's east side:





Then, DYKES attempted to hold open the Columbus Door on the Capitol's east side as law enforcement officers attempted to secure the area:





Shortly thereafter, DYKES can be seen in open-source video, wearing his distinctive tan baseball hat, as he stole a riot shield from law enforcement and raised it over his head to establish sole possession of the item.  Immediately, law enforcement deployed pepper spray in his direction in an attempt to subdue him and regain control of the shield (below stills are of the same scene from different angles), however, the police were unsuccessful:









After successfully stealing the riot shield from law enforcement, additional video footage then shows DYKES holding the shield while he parades around various areas inside the U.S. Capitol Building; a number of stills of those videos are shown below:













At what appears to be later in the day, DYKES appears to have moved to other areas of restricted Capitol Grounds, including on the West Front:





Based on the foregoing, I submit that there is probable cause to believe that DYKES violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

I further submit that there is probable cause to believe that DYKES violated 18 U.S.C. §111(a)(1), which make it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with certain designated individuals, or to aid, abet, counsel, command, induce, or procure the commission of such offenses. Within the meaning of this statute, a designated individual is an officer or employee of the United States or of any agency in a branch of the United States Government (including any member of the uniformed services), while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer in the performance of official duties or on account of that assistance.

I also submit that there is probable cause to believe that DYKES violated 18 U.S.C. § 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempt or conspire to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance. Your affiant further submits that there is probable cause to believe that DYKES used or carried a deadly or dangerous weapon during and in relation to his violations of 18 U.S.C. § 1752(a)(1), (2), and (4), under 18 U.S.C. § 1752(b)(1)(A).

Finally, I submit that there also is probable cause to believe that DYKES violated 40 U.S.C. § 5104(e)(2)(D), (F), and (G), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in any act of physical violence in the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
CARY R. DAVIS
TASK FORCE OFFICER
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 14th day of July 2023.

_____
ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE